No. 24248.

DANIEL J. BRADY *v.* THE PEOPLE OF THE STATE OF COLORADO.
(486 P.2d 436)

Decided June 28, 1971.

MCVICKER, WOODFORD & MYERS, FREDERICK J. MYERS, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, E. RONALD BEEKS, Assistant, for defendant in error.

*En Banc.*

GEORGE M. MCNAMARA, District Judge,* delivered the opinion of the Court.

THE plaintiff in error, Daniel J. Brady, hereinafter referred to as defendant, was convicted of kidnapping and sentenced to the state penitentiary.

His appeal is based on the alleged error of the trial court in refusing to permit defense counsel to cross-examine the victim as to police line-ups and in failing to give two tendered instructions.

The defendant and three other men attempted to "liberate" the defendant's girl friend, Eileen, from the Mount View School for Girls. At approximately 11:50 p.m. on May 9, 1968, the four men climbed a fence, went to a building where they thought the girl was, kicked in the door, and started searching for her. The noise attracted the attention of a matron, Lucille Stuive, who, when she opened the door to her room, saw a girl inmate, Barbara, and three of the four men. She testified that the defendant, Brady, pointed a gun at her head and told her if she didn't get the girl, Eileen, he, Brady, would blow a hole through her head. Later, a fourth man appeared and the matron testified she was ordered by Brady to accompany the four men and the girl inmate while they searched for the defendant's girl friend. The matron was later released before the group reached the fence on the way out. The defendant and his three companions were arrested the following day and charged with kidnapping the matron.

The defendant admits being at the school with the other three and concedes that the kidnapping occurred, but denies that he ordered the matron to accompany the group and denies that he was present when she was so ordered.

On cross-examination, defense counsel attempted to question the matron concerning the line-ups which she attended. The trial court sustained the district attorney's objection on the grounds that such questions were be-

yond the scope of the direct examination. The court advised counsel he could call the matron as his own witness, but this was not done as it is defense counsel's position that the burden is on the prosecution to establish that the in-court identification was not influenced by the line-up procedure.

The defendant relies on *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; and *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178; both cases were decided June 12, 1967. These cases hold that it is constitutional error to conduct a line-up for identification purposes without the presence of counsel unless waived by the suspect. These cases also hold that if the in-court identification had an independent source or its admission was harmless error, a conviction will be upheld.

The court gave the jury the following instructions:

"You are instructed that it is necessary for you to consider the following portion of the statutory definition of an accessory, viz:

" 'An accessory is he or she who stands by and aids, abets or assists, or who, not being present hath advised and encouraged the perpetration of the crime. He or she who thus aids, abets or assists, advises or encourages, shall be deemed and considered as principal and punished accordingly.' "

"You are also instructed that the statutory definition of an accessory during the fact is as follows:

" 'An accessory during the fact is a person who stands by, without interfering or giving such help as he may in his power to prevent a criminal offense from being committed.'

"Under Colorado law an accessory during the fact is not punishable as a principal. Therefore, if you find from the evidence that the conduct of the defendant amounts only to that of an accessory during the fact, then you shall find the defendant not guilty as charged."

The defendant Brady testified on his own behalf.

A portion of that testimony is as follows:

"Q. What happened after that?

"A. Well, we went outside and walked along here (indicating), and we got out not too far away from the building, and someone hollered, 'Let's run,' and Barbara Jean took off running and I think Harry and Glenn Lee were with her, and I think Bob Murphy and myself were with — were with Mrs. Stuive, and, so, then somebody else hollered she didn't have to run, Mrs. Stuive didn't have to run, so they went ahead and ran to the fence, so we got up somewhere in there (indicating), and somebody told her — I think it was Murphy told Mrs. Stuive, 'You can go ahead and go.'"

The jury by its verdict rejected the defendant's theory that he was an accessory during the fact. Under his testimony he was admittedly an accessory standing by, aiding, abetting or assisting in the kidnapping and, therefore, guilty as a principal. We conclude, therefore, that any error in the in-court identification was harmless.

The defendant tendered two instructions, which were rejected by the court. These instructions in effect stated that, if the jury found from the evidence that the defendant violated or attempted to violate the statute which prohibits the aiding of a child to run away from a facility in whose care the child has been placed, then the jury should find the defendant not guilty. The defendant was not charged with such a violation, and the jury was not required to make a finding on such issue. *Watts v. People,* 159 Colo. 347, 411 P.2d 335. Furthermore, it should not be necessary to state that the commission of one crime is not a defense to the commission of another and separate crime.

Judgment affirmed.

DONALD A. CARPENTER, District Judge* participating.

MR. JUSTICE KELLEY and MR. JUSTICE ERICKSON not participating.

*District Judge sitting under assignment by the Chief Justice under provisions of article VI, section 5(3) of the constitution of Colorado.