(October 19, 1995)

◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL A. BEVERLY, Appellant. [632 NYS2d 694] —Mikoll, J. P. Appeal from a judgment of the Supreme Court (Harris, J.), rendered December 16, 1992 in Albany County, upon a verdict convicting defendant of the crimes of burglary in the first degree (three counts), robbery in the first degree (two counts), criminal use of a firearm in the first degree, assault in the first degree (two counts) and reckless endangerment in the first degree.

On May 29, 1991 at approximately 12:15 A.M., Bruce Burden and his girlfriend, Tracy Knighten, were upstairs in their two-story apartment at 624 G South Pearl Street in the City of Albany when they heard a knock on their front door. Knighten opened the front door and four persons in masks rushed into

the apartment. Three of them went upstairs and confronted Burden in his bedroom. One remained downstairs with Knighten. Knighten's three children were also in the apartment.

Upstairs, the three individuals, at least two of whom were armed with handguns, threatened Burden demanding drugs and money. Burden denied having any drugs but gave the three $1,500 that had been hidden in his closet. During an ensuing scuffle Burden claims that he was able to pull off the masks of defendant and codefendant Scottie Lanier. Burden was shot in the chest, arms and spinal column before the four aggressors fled the scene.

As a result of his injuries Burden was permanently paralyzed and spent five months in the hospital. He did not cooperate with police investigating the matter until, upon his release from the hospital on October 22, 1991, he was charged with possession of cocaine. He then indicated that he would cooperate in the investigation. Burden apparently had the cocaine in the apartment and before the police arrived at the scene asked Knighten to remove it. Instead, she turned the cocaine over to the police while Burden was hospitalized. Burden identified defendant's photo from a third photo array presented to him and also identified the photo of Lanier from one of the arrays.

On October 26, 1991, Detective Kenneth Kennedy and Officer Rickey Vincent of the Albany Police Department obtained defendant's oral and written statement wherein defendant admitted his participation in the criminal activity but claimed it was Lanier's idea. Subsequently, defendant and Lanier were indicted in a 10-count indictment, the first count of which charged attempted murder in the second degree (see, Penal Law §§ 110.00, 125.25). Later, codefendants Marlon Dace and George Scott were indicted for their alleged participation in the same 10 crimes. Eventually the two indictments were consolidated for trial on motion of the People. Defendant and Lanier informed Supreme Court they had no opposition to the consolidation while Dace and Scott opposed it.

Supreme Court conducted a suppression hearing to determine *Wade* and *Huntley* issues raised by defendant and found that defendant's inculpatory statement was voluntary and therefore admissible. Supreme Court also ruled that Burden's photo identification of defendant was admissible at trial. Prior to trial, in November 1992, Supreme Court held a *Sandoval* hearing and ruled that defendant could be cross-examined about two prior convictions if he decided to testify at trial. However, defendant chose not to testify at the trial. The three codefen-

dants were acquitted on all counts. Defendant was also acquitted on the first count (attempted murder in the second degree) but convicted on all nine other counts.

Defendant was sentenced under the various counts to the following terms of imprisonment: burglary in the first degree, $8^1/3$ to 25 years (three counts); robbery in the first degree, $8^1/3$ to 25 years (two counts); criminal use of a firearm in the first degree, $8^1/3$ to 25 years (one count); assault in the first degree, 5 to 15 years (two counts); and reckless endangerment in the first degree, $2^1/3$ to 7 years (one count). All terms were to run concurrent with each other except for the two robbery convictions, which were to run consecutively to each respective burglary conviction. Defendant's motion to set aside the verdict was denied.

On this appeal defendant's claim that his inculpatory statement was involuntary and should have been suppressed because he was illegally detained and subjected to police pressure in a coercive environment is rejected. The record demonstrates that the car in which defendant was riding was lawfully stopped based on Officer Vincent's reasonable suspicion that defendant was wanted for questioning in regard to the Burden break-in and robbery after defendant had been identified as a participant (*see, People v May*, 81 NY2d 725, 727; *People v Harrison*, 57 NY2d 470, 476). Likewise, the record reveals there was no coercive atmosphere or undue pressure placed upon defendant to give police a statement. Defendant voluntarily agreed to go to the station for questioning. He was advised of his constitutional rights and within two hours of being stopped had given and signed a typed statement. Considering the totality of the circumstances, the statement was voluntary (*see, People v Jordan*, 193 AD2d 890, 892, *lv denied* 82 NY2d 756; *People v Wright*, 171 AD2d 905, 906, *lv denied* 77 NY2d 1003; *People v Shields*, 125 AD2d 863, 864, *lv denied* 69 NY2d 955).

Defendant's argument that the People failed to present sufficient evidence of identification at the suppression hearing also lacks merit. At the suppression hearing Burden testified that he struggled with the perpetrators at which time their masks came off. He was able to identify them, including defendant, from his personal observation of them and prior acquaintanceship with them. We cannot say that such testimony was incredible as a matter of law. It was for the court observing and hearing the witnesses to resolve questions of credibility and great deference is to be given that court's findings (*see, People v Yukl*, 25 NY2d 585, 588).

Defendant also contends that the verdict was inconsistent and that severances should have been granted and the four defendants tried separately. These issues have not been preserved for review on appeal by proper objection or motion in Supreme Court at a time when any error could have been corrected; nor do we find any basis to reverse on these issues in the exercise of this Court's discretion (*see, People v Satloff*, 56 NY2d 745, 746; *People v Downs*, 77 AD2d 740, 742). Likewise, defendant failed to raise the issue that the redaction of a portion of his statement was prejudicial to him at trial and that issue is also not preserved for review (*see, People v Safian*, 46 NY2d 181, *cert denied sub nom. Miner v New York*, 443 US 912).

We have examined defendant's argument that Supreme Court abused its discretion in making its *Sandoval* ruling allowing cross-examination of defendant as to two drug-related convictions and find it unpersuasive. Supreme Court could properly conclude that the two prior crimes constituted individual acts of dishonesty demonstrating a willingness to place one's own self-interest above that of society (*see, People v Fana*, 142 AD2d 684).

Defendant's claim set forth in his *pro se* brief that Supreme Court erroneously sentenced him to serve consecutive terms on the robbery crimes to the burglary sentences rather than concurrent is rejected. The burglary occurred upon the forcible entry into Burden's dwelling while the robbery occurred upon the later confrontation with Burden when the money was demanded and forcibly taken. These were two separate and discrete acts involving different material elements of the two crimes (*see*, Penal Law § 70.25 [2]; *compare, People v Sturkey*, 77 NY2d 979, 980-981, *with People v Day*, 73 NY2d 208, 212). We find no abuse of discretion in Supreme Court's decision to impose consecutive sentences in the circumstances of this case.

Crew III, White, Yesawich Jr. and Spain, JJ., concur. Ordered that the judgment is affirmed.